May it please the Court, I'm David Rossmiller. I'm the attorney for Plaintiff Appellant Harris Thermal. I'd like to reserve four minutes of my time for rebuttal. Fine. Watch your own time. Thank you. There are a number of assignments of error here, and rather than just listing them or going through what we said in our briefs, I thought I would cover two main points that I think are important first off. One of those is dealing with this question, there is a question of extrinsic evidence, whether extrinsic evidence should be used to analyze the duty to defend in a claims-made policy. The important point about that that I would like to make is that even if the extrinsic evidence is analyzed in this case, Harris Thermal wins. The extrinsic evidence that is analyzed, if the district court was correct in that that extrinsic evidence that was analyzed was not a claim under the policy, then it doesn't matter whether the extrinsic evidence is analyzed or not, because Harris Thermal would still win. The second main point that I would like to bring up has to do with how the exclusions were analyzed by the trial court, how the exclusions work with the coverage grant of the policy. I would appreciate your doing the second first if I understand what you're talking about, because I don't understand why we need to deal with this question of the timing of the notice, because it seems to me that the more important questions are the two substantive exclusions and why they're not dispositive here. By the substantive exclusions, you're speaking of the faulty workmanship and the designer-manufacturer. Correct. Excellent. I'll cut right to the chase on this. Unless my colleagues think otherwise. No, I agree. I mean, couldn't we decide the case on that basis alone and skip trying to assess what the Oregon Supreme Court would do with respect to this issue of whether extrinsic evidence should be considered or not in terms of the policy? Yes. The case could be decided on those exclusions alone. Also there, the Court does not, could decide the matter considering the other factors and not consider extrinsic evidence. But not in your favor. I mean, if you were to win, we'd have to get to all these issues. If we lost, obviously, on those two exclusions, yes. But the Court could actually look at the rest of the things, and we could win on those, and the Court might decide to look at the other things, and it's not necessary to deal with the extrinsic evidence at all. Anyway, why don't the two substantive exclusions decide the case against you? That's what I want to know. Harris-Thermol's point on that and the assignment of error on those is that the coverage grant gives something. The coverage grant is the part of the policy that says James River will ensure, will pay for all sums that Harris-Thermol becomes legally obligated to pay. Well, what it seems to cover is instances in which a architect or engineer just does the architecture or engineering but doesn't actually do the work. Well, Your Honor, this is true, that there are certain things that are excluded. And we don't say that there aren't things in the complaint that don't fit, that aren't there. We acknowledge that there are things in the allegations that fit within those two exclusions. However, because the policy grant gives a certain amount of coverage, the exclusions just take away certain things. They don't take away all of it. Well, tell me why this complaint has anything in it that doesn't result from the designer or manufacturer of goods which were sold by you. Yes. Why did the complaint is not about that? For example, paragraph 48, 50 and 53 of the complaint, Your Honor, ER 45 and 46, I believe, those can be what is granted by the coverage grant is all things to do with what an engineer does. That doesn't mean just what they manufacture or design. Engineers have other functions. Otherwise, the exclusions take away all the coverage. So there has to be something left over. No, they don't take away all the coverage. They take away the coverage in instances in which you sell is your own product rather than you're simply acting as an engineer or architect. Yes. And that exactly. But there are any products? Installed or sold or anything here that weren't your products, your client's products? Not that I'm, I mean, there were other components of the project, yes, but other people didn't. Components is not what we're talking about. I mean, it seems to me that if I read exactly what designer, manufacturer and folding workmanship exclusions suggest under the policy, even in the paragraphs you cited, there's nothing that your client didn't provide in this particular situation which wasn't their work, their manufacture, their workmanship. Well, you have a point, Your Honor, but here's the point. And that's what's excluded. Yes. Those things are excluded. But there are other things that are not excluded. Well, but there's nothing else that you provided to the project except that. I would submit, Your Honor, that there are. What? Just what? If you look in paragraph 50. All right. I looked at 50. It talks about the judgment. And in paragraph 53, it talks about the due care. Paragraph 40, if you don't mind, Your Honor, I'd refer to the record. Okay. I mean, I'm looking at 50, and I looked at this. I'm looking at the resultant work products. Again, we're back to products. And, again, I'm trying to figure out how that wouldn't be excluded. Because there's a component. Things have multiple causes, I would submit, Your Honor. A given result can happen because of one cause. It can happen because of two or more. All right. But we're asking something very specific. One of the exclusions talks about design. There's no dispute that these were products that were supplied by you. So you seem to be arguing there's something in the complaint which isn't about design or manufacture and is also not about faulty workmanship. What is it specifically? Read it to us. Paragraph 48. Okay. With reasonable care and in a good and workmanlike manner of the type exercised by other professionals. I mean, faulty workmanship, right? Bad workmanship. But it suggests reasonable care, which is the engineer's judgment and discretion in overseeing the project. Try design. Design. Manufacture. I mean, I don't understand what's left after design, manufacture, and workmanship. What's left? Those things can go hand in hand. One can design something and lack due care. One can also ‑‑ let's, for example, let me try to come at it this way. The way that this thing was built, there was an allegation that this nozzle didn't extend into the heat exchanger in the right way. That it could be a design problem. That's an allegation. It could be a manufacturing problem. It could be faulty workmanship. But it could also be, Your Honor, that the engineer lacked due care, as is said here, by failing to understand that this wouldn't work. Or failing to ‑‑ Is that a design problem? But you could ‑‑ it could be those things, but the question is what's in the complaint? And where in the complaint do you specifically assert that the problem here resulted from an engineer's bad judgment about what kind of nozzle to use or how to put the nozzle into the machine, or as opposed to the manufacturer of the nozzle and the design of the nozzle? That doesn't seem to be there. You're talking as if it could be there, and it comes in under the umbrella of the term reasonable care. But where is it specifically said that it is that type of a judgment problem? Well, the sentences I was looking at, but I understand Your Honor's point, and I would respond to it this way. One of the cases we cited was the Oregon Court of Appeals from last year, the State Farm v. American Family case, in which the Court of Appeals said that the complaint is to be read so that if any proof could be admitted of a covered act, there is a duty to defend. If one took away all those allegations about faulty workmanship or design defect, and the allegations were strictly lack of due care in, say, failing to notice that the nozzle was put in wrong. Say that Harris Trimble hadn't done it. Still, Delta T could admit that proof and get a judgment of negligence. Well, that's fine. Explain to me why that's not a manufacturing problem. It could be both. Oh, I don't see the both. It seems to me you're saying the same thing twice. I am. In other words, not putting something in correctly is a problem of manufacture. It's not something else. Not to disagree with, Your Honor, but I think that it can. Well, you can disagree with me, but I'd like to know why. I think it can. Something has causes. Two or more causes can go side by side. I understand that, but I want to know why the phrase arising out of manufacture doesn't include putting something in wrong. Because there's also a component of the engineer's performance that if that were taken away, Your Honor, would still be present. You could say both. I get what you're saying. You could have a complaint that says our engineer, the engineer, exercised bad judgment in figuring out this machine and what nozzle to use and how to put the nozzle in and so forth. And the complaint could also say that the nozzle was manufactured poorly or designed poorly. Yes. But if you went through the complaint and excised out everything that deals with manufacture and design, I don't understand how this complaint would survive a 12v6 analysis. There would be no – there isn't anything in it that says the engineer messed up and exercised bad judgment. It's just – it's not there. I disagree, Your Honor. But what the State Farm case says is that if the allegations could admit that proof – so let's say that there are damages alleged that – let's suppose that the Delta T complaint asks for damages against Harris Thermal because of negligent decisions that Harris Thermal was alleged to have nothing to do with the manufactured design or faulty workmanship. Could Delta T, under these allegations of negligent engineering decisions or foolishly letting the thing out the door in the first place, could they still recover under their theories? And they could. That's what the State Farm case says. I guess I'm a little worried because I read State Farm and now I'm looking at your particular reason or particular argument. It seems to me that you were selling a product. Or you were selling a heat exchanger. You were selling products to them. If you went and did some engineering on another product, I think one could make this argument that you're making. But where you make the product and the product then goes to them and there's no allegation here that they didn't do the work according to the design or they didn't do the work according to the way they appropriately thought they put the product together, or it would be faulty workmanship if they did, I'm having still a tough time understanding how you get out from under these exclusions. Because anything you say the engineer does with your product is a part of the design or manufacture or becomes faulty workmanship when you're selling the product. But that doesn't mean that what you said is true, Your Honor, but that doesn't take away what is covered is covered. It doesn't become uncovered because something else is uncovered. These things over here are uncovered, but the thing that is covered stays covered. If any one allegation produces a duty to defend, that one stands, even if it's only one. But you see, the language of the design or manufacture exclusion is the design or manufacture of goods or products which are sold or supplied by you. So the fact that the as long as you've designed, it results from the design or manufacture. And my understanding of what you're saying about if the engineer did something wrong, that would be design or manufacture. It would be design. That could be a component of it. That could be another. It would be all of it. If the engineer put this together this way instead of that way, that's not design? It does not. It should be put together this way? That's not the design? Yes, it is, but there's another component to it. If you took that away and took that function away from Harris Thermal, is there still another function that they performed? What's the other function? The function was that they gave advice and sent this thing out the door saying that it would work. When it didn't. Even if they had never designed or manufactured it, that still is a liability issue. And what we've been saying is that these are things that are appropriately determined on the duty to indemnify. All we have to get is one possibility to get within the duty to defend. It might be that in the final reckoning that all those things are determined to be the liability that are excluded and none of it results from other types of negligence that would be covered. But that's something that shouldn't be decided on the duty to defend. You're over your time. We'll give you a minute in rebuttal. Thank you. Sir. Good morning. May it please the Court. Aaron Denton for James River Insurance Company. Despite counsel's protestations, I can't read this complaint, this Delta C's counterclaim, as seeking something other than damages arising out of Harris Thermals' defectively manufactured designed product. Those words are used throughout the counterclaim. There's some, I mean, they come at it a myriad of different ways. But the gravamen of the complaint is Harris Thermal manufactured heat exchangers that were defective and weren't suitable for this ethanol plant. And the best I could do out of his last statement would be, even if this engineer had not, even if they had not designed the product or manufactured it, they still said to these people, here, this is a good product. And we recommend you use it. And that that's not design or manufacture and that that's within the complaint. What about that? I think that that blurs the distinction between what's covered by the policy and what's excluded by the policy. If you look at the declarations, there's a definition of professional services, and that definition is review of others' plans and calculations, process engineering services. This policy covers Harris Thermal when they're operating as an engineering consultant and they're saying somebody else's design is a good design, somebody else's product is a good product. This is not a product's liability policy. It's not, you know, and again, the allegations, the substance of Delta T's claim is Harris Thermal manufactured a defective product. Delta T does not allege, and that's obviously what's germane for the question of the duty to defend, Delta T does not allege, you know, Harris Thermal, you let me down as an engineer. Delta T alleges, Harris Thermal, you let me down as a manufacturer of these products. So I think that, you know, again, this policy covers situations where Harris Thermal is acting as a consultant. It's acting, supervising another contractor's work. It doesn't cover Harris Thermal's work as a manufacturer. And interestingly, you know, Harris Thermal had another insurance policy in place at this time. They have an occurrence-type policy with an insurance company that defended the underlying action. The James River policy includes a provision, an exclusion that says this policy does not cover a claim that would be covered by an occurrence-type policy. So they're not overlapping coverages. They're complementary coverages. And that worked out in this case. Harris Thermal got a defense from the Delta T action from the occurrence insurer. James River's policy plainly doesn't apply. It's not a manufacturing policy. Kennedy, could you address the question of whether the district court went too far in sua sponte dismissing the case after finding, as it did? Yes, Your Honor. And I don't. It wasn't briefed or argued. It was completely sua sponte, correct? It was argued. It was argued briefly at oral argument. And the Judge Papik, you know, asked me and counsel Mr. Rossmiller, you know, what are we going to do here? And I think the critical issue is could Delta T walk into a courtroom in a trial of its case against Harris Thermal and possibly prove any damages covered by James River's policy? And Delta T could not do that. Its claim is strictly a manufacturing defect. Was there an opportunity to really brief that issue to the court, however? There was an opportunity to argue it. It was not briefed. I think the court had authority to make that decision. I think the court was right because counsel has touched on this, and Oregon the duty to defend is could the claim against the insured, could that claimant go into court and prove damages covered by the policy? And I think the design manufacturer, the faulty workmanship exclusions, they plainly apply to Delta T's counterclaims, and Delta T could not have gone into court and proved any damages covered by the policy. I don't think you need more briefing to get there. And I think the district court correctly ruled on indemnity when it did. It wasn't that the case was really presented to the court on the duty to defend, wasn't it? That's accurate. And isn't it correct to say, you correct me if I'm wrong about the law, isn't it possible at least that you could have a situation where there is no duty to indemnify applying the Eight Corners rule, but yet there's no duty to defend applying the Eight Corners rule, but nevertheless, it could be found that there is a duty to indemnify? That's theoretically possible. You're correct, Your Honor. I don't think it's possible here under the facts of this case and the allegations of Delta T's, you know, without amendment, and those are critical words that the Oregon appellate courts have repeated again and again. You know, you have to – Delta T would have had to amend their complaint against Harris Thermal to allege something that wasn't in the operative counterclaim in order to trigger an indemnity obligation on James River's part. But what's – so what's the problem with that? I mean, you could get a finding that there's no duty to defend under the Eight Corners rule, and if the Court hadn't gone the next step, then wouldn't – you'd still have an opportunity to address the question of a duty to indemnify, but it wouldn't have been answered prematurely. And again, I don't think it was premature. I don't think there was anything wrong with waiting around and seeing what the proof was. I don't think there was anything wrong with what the district court did, which was decide, hey, based upon this operative pleading, Delta T can't trigger indemnity coverage. They'd have to do something more. And if that happens, then maybe, you know, Harris Thermal brings that back to the attention of the Court and we revisit the issue, but I think the district court appropriately decided that, you know, given Delta T's allegations, it was time to move on. And the other way to proceed, it doesn't make more sense to do the usual thing which is to have brief arguments and decide the issue instead of deciding it without that and then saying if you have a problem, come back. Again, I think the district court could have done it either way, but I think that the route it chose was appropriate and certainly expedient. I guess I'm going to interrupt just a little bit here, and I'm sorry to do that, but I'm a little struck by your assertion that there's some theoretically possible way to indemnify if you have no duty to defend. In Idaho, that wouldn't be the case. Duty to defend is overabundance. You get a duty to defend when you have no duty to indemnify, even if there's a possibility of a duty to indemnify. You have a duty to defend. But if you have no duty to defend, there's no duty to indemnify at all because there's no possibility out there. And I guess I'm having a tough time understanding your answer then. This is based on what part of the Oregon statute, and I look pretty careful at it, would suggest that there's a duty to indemnify when you haven't got a duty to defend. Your Honor, I appreciate your question, and I'll candidly let you know I can't describe for you a scenario today where there could be no duty to defend but a duty to  I don't know if there's a case where there's a piece of the Oregon court of appeals decision. Could it be the result of the eight corners rule such that there could be something that doesn't appear in the complaint but suddenly shows up at trial and is allowed in for some reason? Could that be how it is? I'm sorry. I don't understand your question, Your Honor. In other words, could it be that there's that for duty to defend purposes, you look at the complaint. I understand that we have an issue about the notice, but leaving that out and talking about the substance, which is now what we're now doing, you only look at the underlying complaint, right? You don't look at extrinsic evidence for duty to defend purposes, for substantive reasons at least. So it's theoretically possible that something could happen at trial, which brings the case within the duty to indemnify that wasn't and didn't appear in the complaint. That's conceivable, Your Honor, yes. So that seems to me the only possible scenario, that something shows up in the actual trial of the case. I think that's correct, Your Honor. That you couldn't have foreseen from the complaint. I would agree with that, Your Honor. Has a trial in the underlying case happened or is it settled or what happened to it? My understanding is that the underlying case has settled. I see. And it's gone away. That scenario is not going to happen because nothing more is going to go on in terms of actually developing the record. That's correct, Your Honor. If it pleases the Court, with the time I have remaining, we focus, I think, our argument on the substantive exclusions, and I'd like to speak a little bit about the issue of extrinsic evidence and whether or not Delta T's pre-policy period letter to Harris And I think that in terms of the issue of extrinsic evidence, at least on when claim is made against the insured, we have a clear road map to get there and understand how the Oregon Supreme Court would decide that issue. We have the Ninth Circuit's Oregon Schools decision where they predicted that the Oregon Supreme Court would follow other jurisdictions in deciding that the notice of prejudice rule doesn't apply to claims made policies, so that's a recognition of the distinction between claims made and occurrence policies. We've got the Edwards case out of the First Circuit, and there they said that the policy considerations which support the Eight Corners Rule and its application to occurrence policies don't similarly apply to claims made policies. I think that the Oregon Supreme Court also, in Shearer, a recent case, the insurer tried to invoke the Eight Corners Rule and arguing it didn't have a duty to defend because the complaint against the additional insured didn't clarify the additional insured's status as such. And I think that the rationale there is if we can't expect the complaint against the insured to include allegations which would trigger coverage, we can look beyond the complaint. I think the Oregon Supreme Court would allow extrinsic evidence in construing or determining the duty to defend under a claims made policy. If this Court were to reach that question, would you then say that the consideration of extrinsic evidence should be limited to the question of whether a claim was made inside the period or outside the period and not considered for other purposes, such as in this case whether the reasonably foreseen exclusion applies? I would say that the Oregon Supreme Court would at least go so far as to say that extrinsic evidence is admissible on whether or not the claim was first made and reported during the policy period. Whether they would go further and say we can also consider extrinsic evidence and the professional services exclusion or the reasonable foreseeability, that's another question. But they could. And then your road map sort of break down. I mean, you've got Shearer, you've got Edwards, you've got Oregon schools to get you to that first step. But after that, there's nothing in those cases, is there, that really suggests that you use extrinsic evidence to go further than that? I appreciate that point, Your Honor, and that's accurate. I think the stage one is do we question one is do we consider extrinsic evidence to say was the claim made and reported? Was coverage triggered? It would be an additional step beyond the road map provided by the authority in our briefs to say, well, can we look at extrinsic evidence for everything? And I would concede that you can't. I'm not sure that the claims made in Shearer can develop extrinsic evidence on every point and to assert every exclusion. But I think your argument is that for the reasonable foreseeability argument, once you have these letters in, that's all you need. You don't need anything else. You can just look at them and say it's reasonably foreseeable. Well, that's correct. I mean, I think objectively the letter, Delta T's letter, and there's an indemnity issue, too. If you put that letter out there, then it's I read that letter and it's saying, look, you know, your heat exchangers were defective and actual and consequential damages and a three-month work delay and performance guarantees that we lost. It's pretty plainly foreseeable. What are we talking about? The July letter? Yes. Was that attached to the complaint? It was attached to Harris Thermal's declaratory judgment complaint in Oregon's district court. Delta T, the chronology there was Delta T filed a coverage action, or I'm sorry, its first action in Virginia. Harris Thermal got that dismissed. And then Harris Thermal So why isn't that the end of the story? I mean, at least in Federal court, something that's attached to the complaint is part of the complaint. It's not attached to the underlying complaint, the Delta T complaint, though, correct? Actually, Harris Thermal, so Delta T filed its first case in Virginia. That's dismissed. Harris Thermal preemptively files a declaratory judgment action in Oregon against Delta T and attaches it. Harris Thermal did attach the July 25, 2007 letter from Delta T to its declaratory judgment complaint. Which was the underlying complaint. And that is the underlying complaint. And then there was a counterclaim. But that's the underlying case. That's the underlying case. So, I mean, we've briefed this. Is it really extrinsic if it's in the pleadings? You know, Harris Thermal makes it a part of the record when it files its complaint. And here's the letter, the July 25, 2007 letter that says, you know, this happened and this happened and this happened and, you know, your exchanges are effective and we want money. And it's peculiar because it's not attached to Delta T's counterclaim, but it was part of the pleadings in the underlying case. And that's correct. And, you know, Harris Thermal sort of preempts Delta T's ability to attach it to its own counterclaim by putting it in the declaratory judgment complaint. Well, correct. Thank you. Okay. Your time is up. Thank you very much. Thank you. We'll give you one minute in rebuttal. Thank you. About the July 25th letter being attached to the complaint, Delta T, remember, filed an action first in Virginia. They never did attach that July 25th. That's not the operative underlying case because it was dismissed. Yes. But the operative underlying complaint is the Delta T counterclaims. If Harris Thermal could plead itself out of coverage, it could also plead itself in coverage by simply alleging covered damages. That's why it can't be examined. I guess I want to know your best case for that because I think this is the biggest part of this particular case. There was a complaint filed. It's in the complaint. That complaint then had a counterclaim which didn't include it, didn't need to include it. I'm still having a tough time understanding why one can't look at that letter which was attached to the complaint which began the underlying action just because somebody files a counterclaim. Here's the ---- I'm sorry, Your Honor. I mean, the best case you got for that because it certainly was a part of the underlying action. It was a part of the underlying action, but just the same way that a third party complaint filed by a defendant against others couldn't be used to plead that defendant into coverage simply by what that defendant alleges against other third parties. Well, I guess I'm having a tough time because if we look at what the Fourth Circuit does and what the Supreme Court of New Jersey does, they'd only believe that all this notice about when the notice was given and when the claims made was given has anything to do with the Eight Corners Doctrine. It's a doctrine which when alleged in the complaint before the court that's right before us, when they allege no notice was given, that's something we take up long before we get to the Four Corners Doctrine about whether there's coverage. We take up the notice to begin with. That's the way they do in a lot of states. It has nothing to do with the Four Corners Doctrine at all. Well, if going with that rule, one of the things that I'd like to bring out is that is a different rule, Your Honor. It's not different. It's just how they deal with this particular problem in other states. I understand, Your Honor, but that's a different question than the question that Mr. Denton was responding to about the potential claim or the reasonable exclusion. If you look at that exclusion, that exclusion and nowhere, neither in that exclusion or anywhere else in the policy does it say that if you know of a potential claim or reasonably suspect one, that you should submit it to the insurer. There is no requirement in that exclusion or anywhere else in the policy of reporting a potential claim to the insurer. What is the exclusion about, then? What does it mean? It was written badly. It's bad draftsmanship. This is why it's so dangerous to look at extrinsic evidence or expand this beyond where it is. Because by the way that exclusion reads, if you knew or reasonably could have foreseen that a claim could, is the language that's used, could happen, that inquiry never ends. An insurer could look through all kinds of things. And then what? You're supposed to do what? It doesn't say. It doesn't say. Well, your point is that if the letter is, in fact, extrinsic evidence and not integral to the complaint, then it opens the door to all manner of extrinsic evidence for the determination of whether this exclusion applies or not. And once the floodgates are open, there's no limit. The eight corners rule is gone. Yes. And this exclusion, the way the exclusion is worded, is a prime example of how far it could go, yes. If I could say one more thing. I don't want to push my luck on the things in the complaint. But I would like to mention one thing in response to what Mr. Denton said about that that was all, the engineering design was all, that was required of Harris Thermal by Delta T. In paragraph 67, ER 49, it's, I'm sorry, paragraph 66, same page, it said that Delta T was relying on Harris Thermal's engineering expertise. If you look at that so-called EEPO, that was the basis of the contract between those two parties, there are statements in there that do care is required of Harris Thermal. There are statements in the complaint that says that Harris Thermal's do care was what was lacking. So they were expecting more than just construction or design. They were expecting Harris Thermal's engineering expertise not to screw up. I'm really having problems. Okay. Thank you very much. You're well over your time. And we will submit the case of Harris Thermal v. James River Insurance and go on to United States of America v. Sarko. Thank you. Thank you.
judges: Smith, Berzon, Smith